UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>CHRISTINE JESENA,<br><br>   Defendant. | Case No. 12-cv-02278 JSW (NC)<br><br>**REPORT AND RECOMMENDATION GRANTING DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 12 |

Plaintiff J & J Sports moves for entry of default judgment under Federal Rule of Civil Procedure 55(b)(2) against defendant Christine Jesena, individually and doing business as Handaan Food Center, for Jesena's alleged violations of 47 U.S.C. § 605(a), 47 U.S.C. § 553(c)(3)(A)(ii), conversion of plaintiff's property, and violations of Cal. Bus. & Prof. Code § 17200.  J & J Sports requests $114,200.00 in damages.

The Court RECOMMENDS that the District Court GRANT J & J Sports' motion and enter default judgment against defendant, awarding $9,400 in damages to plaintiff.

## I.  BACKGROUND

**A.  J & J Sports' Complaint**

Plaintiff J & J Sports Productions is a closed-circuit distributor of sports and entertainment programming.  Mot. Def. Judg. at 1, Dkt. No. 12-1; Gagliardi Decl. ¶ 3, Dkt. No. 16.  J & J Sports owns the exclusive right to distribute on a nationwide basis a program titled *Manny Pacquiao v. Shane Mosley, WBO Welterweight Championship*

1  *Fight Program* ("the program"), which was televised nationwide on May 7, 2011.
2  Compl. ¶ 14, Dkt. No. 1.  J & J Sports entered into various sublicensing agreements with
3  commercial entities, including entities in California, by which it granted these entities
4  limited sublicensing rights, specifically the right to publicly exhibit the program within
5  their respective commercial establishments.  *Id.* ¶ 15.  J & J Sports alleges it "expended
6  substantial monies marketing, advertising, promoting, administering, and transmitting the
7  program" to these commercial establishments.  *Id.* ¶ 16.
8       Defendant Christine Jesena is an owner or operator of a commercial establishment
9  doing business as Handaan Food Center in San Francisco, California.  *Id.* ¶ 7-8.  J & J
10 Sports claims that Jesena personally, or by specifically directing employees of Handaan
11 Food Center, intercepted and exhibited the program without authorization and for
12 commercial gain.  *Id.* ¶ 9-12.  Investigator Mike Joffe went to Handaan Food Center on
13 May 7, 2011 and observed the unlawful exhibition of the program at that establishment.
14 Joffe Decl., Dkt. No. 12-3.  In his declaration, Joffe states that he saw one television set at
15 Handaan Food Center on which he watched the program.  *Id.* at 2-3.  Joffe conducted
16 three headcounts during his visit and observed eighteen, twenty-one, and twenty-three
17 customers respectively.  *Id.*
18     J & J Sports filed a complaint against Jesena on May 4, 2012, alleging:
19 (1) violation of the Federal Communications Act, 47 U.S.C. § 605; (2) violation of the
20 Federal Communications Act, 47 U.S.C. § 553; (3) conversion; and (4) violation of
21 California's Business and Professions Code §§ 17200-17210.  Compl. ¶ 13-41.  J & J
22 Sports served a copy of the complaint on Jesena on July 2, 2012.  Dkt. No. 8.  Jesena has
23 filed no response to the complaint.  The clerk entered default as to Jesena on August 8,
24 2012. Entry Def., Dkt. No. 10.
25 **B.  Motion for Default Judgment**
26     J & J Sports now moves for the entry of default judgment against Jesena under
27 Federal Rule of Civil Procedure 55(b)(2).  J & J Sports asserts that because the default
28 entered by the clerk serves as an admission of the factual allegations in the complaint, the

Case No.  12-cv-02278 JSW (NC)
REPORT AND REC. GRANTING
DEFAULT JUDGMENT                2

only remaining issue is the amount of damages and costs to be awarded to J & J Sports. *Id.* at 8. J & J Sports seeks (1) $10,000 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $100,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii); and (3) $4,200 in conversion damages. *Id.* at 8, 19-20; Riley Decl. ¶ 7, Dkt. No. 12-2. The default motion was referred to this Court by District Judge White for a report and recommendation under Federal Rule of Civil Procedure 72(a). Dkt. No. 14.

## II. STANDARD OF REVIEW

"[D]efault judgments are generally disfavored. Whenever it is reasonably possible, cases should be decided upon their merits." *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). "A district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). In determining whether default judgment is appropriate, courts consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

## III. DISCUSSION

**A. Jurisdiction**

When presented with a motion for default judgment, the court has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because the complaint alleges violations of the Federal Communications Act. Compl. ¶¶ 9-18. J & J Sports' claims under California law are also properly before this Court under 28 U.S.C. § 1367, because they are so related to J&J Sports' claims under federal law that they form part of the same case or controversy.

Jesena owns and operates Handaan Food Center, located in San Francisco. *Id.* ¶¶

7-8. As defendant resides and conducts commercial activities in this district, the Court may exercise personal jurisdiction over Jesena. *See Brayton Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1138 (N.D. Cal. 2005) ("[t]his Court has the power to hear a case against a defendant who resides anywhere in this state.").

**B. The *Eitel* Factors Support Entry of Default Judgment**

Considering all of the *Eitel* factors, the Court finds that the entry of default judgment is appropriate but that J & J Sports' requested damages award is not supported by the factual allegations in the complaint.

### 1. The Merits of J & J Sports' Substantive Claim, Sufficiency of the Complaint, and the Possibility of a Dispute of Material Fact

After entry of default, all well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The merits of plaintiff's substantive claims, the sufficiency of the complaint, and the possibility of a dispute of material fact are thus considered together.

Although J & J Sports alleges violations of 47 U.S.C. § 605 and 47 U.S.C. § 553, as well as violations of California's law against conversion and California Business and Professions Code §17200, J & J Sports' pending motion for default judgment only seeks damages under § 605 and for conversion. *Compare* Compl., *with* Mot. Def. Judg. at 11, 14, 20. J & J Sports has adequately alleged a violation of 47 U.S.C. § 605 and conversion by claiming that Jesena unlawfully intercepted and broadcasted the program for commercial gain and without paying J & J Sports its rightful license fee. *See* Compl. ¶¶ 11, 17-18, 29-30. Taken as true, these allegations are sufficient to establish a claim for violations of the Federal Communications Act and for conversion.

### 2. The Sum of Money at Stake in the Action

J & J Sports requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii). Compl. ¶¶ 22, 27; Riley Decl. ¶ 7. With respect to its conversion claim, J & J Sports seeks $4,200, the amount Jesena would have been required

Case No.  12-cv-02278 JSW (NC)
REPORT AND REC. GRANTING
DEFAULT JUDGMENT                4

to pay had she ordered the program from J & J Sports. Mot. Def. Judg. at 20; Riley Decl. ¶ 7. The Court considers each category of damages requested by J & J Sports and concludes that the amount requested is not entirely supported by the record.

### a. Statutory Damages

Under 47 U.S.C. § 605(e)(3)(C)(i), an aggrieved party may recover actual damages or statutory damages at the court's discretion of no less than $1,000 or more than $10,000 for each violation. J & J Sports' request for statutory damages is appropriate here, because, as a result of Jesena's default, it would be impracticable to calculate the actual amount of damages suffered by J & J Sports. The Court finds that J & J Sports is entitled to $4,200 in statutory damages under § 605, as this is the amount that Jesena would have had to pay to purchase a license from J & J Sports. *See J & J Sports Prods. v. Kim Hung Ho*, No. 11-cv-01163 LHK, 2012 U.S. Dist. LEXIS 5470, at *4 (N.D. Cal. Jan. 18, 2012) (awarding statutory damages under § 605 based on the cost of the program's license).

### b. Enhanced Damages

J & J Sports also requests $100,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii). Compl. ¶ 22. That provision gives the court discretion to increase the award of damages to the aggrieved party by an amount of no more than $100,000 for each violation in the event that the court finds a willful violation for purposes of commercial advantage or personal gain. 47 U.S.C. § 605(e)(3)(C)(ii).

J & J Sports asserts that the program was available only through the purchase of a commercial sublicense from J & J Sports and that Jesena did not purchase such a sublicense. Gagliardi Decl. ¶ 9. J & J Sports contends that Jesena therefore acted willfully and for commercial gain, warranting an award of enhanced damages. Mot. Def. Judg. at 15, 20.

The Court finds that in the absence of a lawful license, the evidence suggests that Jesena willfully obtained the program. J & J Sports, however, has not submitted any evidence of "commercial advantage or private financial gain." *See* 47 U.S.C. § 605(e)(3)(C)(ii). In determining whether a defendant acted for the purpose of commercial

Case No. 12-cv-02278 JSW (NC)
REPORT AND REC. GRANTING
DEFAULT JUDGMENT          5

advantage, courts consider a number of factors including: any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *See J & J Sports Prods. v. Sorondo*, No. 11-cv-00411 AWI (SMS), 2011 U.S. Dist. LEXIS 99951, at *10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F. Supp. 2d 1196, 1198 (N.D. Cal. 2000)). Courts in this district have found modest enhancements proper when the case involved a limited number of patrons where the establishment charged a cover charge. *See, e.g., Garden City Boxing Club, Inc. v. Lan Thu Tran*, No. 05-cv-05017 RMW, 2006 U.S. Dist. LEXIS 71116, at *5-6 (N.D. Cal. Sept. 20, 2006) (awarding $1,000.00 in statutory damages and $5,000.00 in enhanced damages when 40 patrons were present and a $10.00 cover charge was imposed).

Here, the investigator asserts that he was charged a $10 "cover charge" to enter the establishment, yet he also states that this fee "included food." Joffe Decl. at 2. In addition, the investigator observed at most 23 persons inside the establishment, which had the capacity to hold 70 to 75 persons. *Id.* at 3. Moreover, the investigator stated that the establishment had only one, 22-inch television set sitting on top of an empty fish tank. *Id.* There is no evidence that the establishment was doing any greater level of business on the night of the fight than at any other time. Finally, J & J Sports has presented no evidence to the Court suggesting that defendant is a repeat broadcast piracy offender. Under these circumstances, the Court finds that plaintiff is entitled to $1,000.00 in enhanced damages.

### c. Conversion

J & J Sports also requests $4,200 in conversion damages. Under California Civil Code § 3336, damages for conversion are based on the value of the property at the time of the conversion. J & J Sports claims that the value of a license to exhibit the program is $4,200. Mot. Def. Judg. at 20; Gagliardi Decl. ¶ 8, Ex. 1. Accordingly, the Court finds that J & J Sports is entitled to recover the $4,200 licensing fee. *See Kim Hung Ho*, 2012 U.S. Dist. LEXIS 5470 at *4 (awarding conversion damages in addition to statutory

damages under § 605).

### 3. Remaining *Eitel* Factors

The Court considers the remaining *Eitel* factors below. The first *Eitel* factor, the potential prejudice to J & J Sports absent default judgment, weighs in favor of entering default judgment against defendant. First, if the District Court denies this motion, J & J Sports will not have a remedy for the harm it suffered as a result of Jesena's alleged acts or the ability to prevent similar acts by defendants in the future. Second, J & J Sports argues that it has lost and will continue to lose customers as a result of Jesena's alleged conduct, suggesting that when commercial establishments provide programming illegally to their patrons at no charge, paying establishments cannot attract paying customers to offset their sizeable investments in commercial licensing, and are therefore discouraged from paying a licensing fee to J & J Sports. Mot. Def. Judg. at 21. Finally J & J Sports asserts that as a result of piracy, it has suffered "severe damage to its goodwill and professional reputation." *Id.*

The sixth *Eitel* factor, whether defendant can display excusable neglect, also weighs in favor of entering default judgment against Jesena, as she did not file a response to the complaint, and there is no evidence that her failure to do so was due to excusable neglect. Finally, as for the seventh *Eitel* factor, the strong policy favoring decision on the merits, although weighing against entering default judgment, it does not appear that litigation of the merits will be possible in this case due to Jesena's failure to litigate.

J & J Sports has had hundreds of these cases heard in this district. Under the circumstances provided in this case, an award of $9,400 is consistent with other default judgments awarded in this district. *See, e.g., J & J Sports Prods. v. Ayala*, No. 11-cv-05437 EJD, 2012 U.S. Dist. LEXIS 133433, at *10 (N.D. Cal. Sept. 17, 2012) (awarding $9,700 in total damages); *J&J Sports Prods., Inc. v. Bonilla*, No. 10-cv-05140 LHK, 2011 U.S. Dist. LEXIS 40602, at *7 (N.D. Cal. Apr. 8, 2011) (awarding $6,600 in total damages); *J&J Sports Prods. v. Paniagua*, No. 10-cv-05141 LHK, 2011 U.S. Dist. LEXIS 33940, at *7 (N.D. Cal. Mar. 21, 2011) (awarding $8,800 in total damages). In

sum, the Court finds the *Eitel* factors weigh in favor of granting default judgment against Jesena for a total amount awarded of $9,400.

## IV. CONCLUSION

The Court RECOMMENDS that the District Court GRANT J & J Sports' motion for entry of default judgment against defendant Jesena and that it award to J & J Sports $4,200 in damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), $1,000 in enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii), and $4,200 in damages under California Civil Code § 3336, for a total of $9,400. Any party may object to this order under Federal Rule of Civil Procedure 72(a) within fourteen days of the filing date of this order.

IT IS SO ORDERED.

DATED: January 11, 2013

_____
NATHANAEL M. COUSINS
United States Magistrate Judge